UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ERIC PRITCHETT, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13 CV 1406 RWS |
| | ) | |
| WARDEN OF ERDCC, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Eric Pritchett, an inmate of Missouri's Southeast Correctional Center, filed this case seeking monetary relief under 42 U.S.C. § 1983 for numerous constitutional violations he alleges occurred during his incarceration at the Eastern Reception, Diagnostic and Correctional Center a Missouri Department of Corrections ("MDOC") facility located in Bonne Terre, Missouri. In a previous order, I dismissed numerous claims and defendants and allowed only Pritchett's assault claim against Defendant Bill Dawes, a corrections officer, to go forward. Dawes has filed a motion for summary judgment based on Pritchett's failure to exhaust his administrative remedies regarding this claim. Because Pritchett failed to exhaust his administrative remedies I will grant Dawes' motion for summary judgment.

*Background*

In his complaint, Pritchett alleges that on August 1, 2012, Dawes was escorting a handcuffed Pritchett to the "hole" (administrative segregation) when they ended up in a back office where there were no security cameras. Pritchett alleges that he was placed in a chair and Dawes started yelling, calling Pritchett insulting names and threatening him. Pritchett told Dawes that Dawes "wasn't going to do anything but take me to the hole, so I can go back to sleep and have room service." Pritchett alleges that Dawes put his foot on Pritchett's chest and pushed him backwards in the chair causing Pritchett to fall to the floor. Dawes told Pritchett to get up but he could not do so because he was handcuffed. Dawes then grabbed Pritchett by the hair and arm and lifted him half way to his feet before releasing Pritchett allowing him to fall back to the floor. Dawes then gave Pritchett "an adequate kick in the stomach" and said "quit fucking around." Dawes then picked Pritchett up and put him back in the chair. Dawes then called a sergeant who came to the office and conferred with Dawes. The sergeant then uncuffed Pritchett and told him to return to his cell which he did.

In his complaint, Pritchett alleges that he was upset and tried to speak with a mental health professional but was not allowed to do so. The next day Pritchett declared that he had suicidal thoughts so he could get away from his housing unit

2

and report the incident.  He alleges that he filed an Informal Resolution Request form (an "IRR") about the incident he had with Dawes.  He said that the only response he got was that the captain of the shift came to speak with Pritchett but nothing else happened.

At his deposition taken in this case, Pritchett tells a slightly different story than he stated in his complaint.  He testified that Dawes confronted Pritchett because Pritchett refused to report to take his medications (called a med pass).[1]  Dawes gave Pritchett the option of going to med pass or going to the hole.  Pritchett chose to go to the hole.  Dawes handcuffed Pritchett and took him to a caseworker's office, with no cameras, sat him in a chair and told Pritchett that Dawes wanted to talk to his sergeant first before taking Pritchett to the hole.  Pritchett and Dawes then exchanged "words" which led to Dawes pushing Pritchett with his foot and Pritchett falling to the floor.  Dawes tells Pritchett to get up but he cannot because of the he was in handcuffs.  Dawes then kicks Pritchett twice in the stomach "not like a soccer ball kicking hard or nothing but it is pretty good kicks."  [Doc. # 19-2, Pl's Depo. at 16]  Then Dawes grabs Pritchett by the hair and arm, lifts him halfway up and drops him.  Dawes says "I told you to get up" and lifts Pritchett the same way and puts him in the chair.

---

[1] Pritchett says he refused to obey the med pass because he was not supposed to take any medications.

The sergeant arrives about five minutes later. Dawes and the sergeant talked outside the office. [Id.] When the sergeant asked Pritchett what was going on, Pritchett said "nothing." Pritchett did not tell the sergeant that Dawes had been assaulting Pritchett. [Id. at 20] When the sergeant asked why Dawes had Pritchett in the office Pritchett replied because he refused to go to the med pass but he was not supposed to be getting medications. The sergeant then said that he did not think he would write up Pritchett for that infraction. Pritchett told the sergeant he wanted to be written up and sent to the hole. The sergeant refused to send Pritchett to the hole and had him returned to his cell by another corrections officer. [Id. at 21] Pritchett received a violation for failing to go to his med pass. [Id. at 16-17].

When Pritchett was returned to his cell he complained to his cellmate about getting written up for failing to obey the med pass but did not mention that Dawes roughed him up. [Id. at 22] Nor did he tell a caseworker later that day that he had been assaulted by Dawes although he did discuss the violation with the caseworker. [Id. at 23] Pritchett does not remember if he asked for medical attention after the incident with Dawes and never received any medical attention for the incident. [Id. at 25] Pritchett never had any issues with Dawes before or after the incident at issue in this case. [Id. at 28]

At his deposition, Dawes confirmed he filed an IRR about the incident. [Id. at 33] He testified he has a copy of the IRR [Id. at 41] He testified that a captain

4

came and talked to him about the incident a month or two after it happened but nothing further was done. [Id. at 30]  Pritchett did not file a grievance after he filed his IRR. [Id. at 39 and 41]  Pritchett testified that he did write letters which were sent to the Inspector General's Office and to the warden of Bonne Terre. [Id. at 30]

Dawes has filed a motion for summary judgment based on Pritchett's failure to exhaust his administrative remedies provided by the MDOC.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324.  In

resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Under the Prison Litigation Reform Act of 1995 ("PLRA"), an inmate must exhaust all available administrative remedies before bringing a 42 U.S.C. § 1983 suit regarding prison conditions. 42 U.S.C. § 1997e(a). "An inmate satisfies § 1997e(a) by pursuing the prison grievance process to its final stage to an adverse decision on the merits. It does not matter that the inmate subjectively believed that there was no point in his pursuing administrative remedies. Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015)(internal quotations and citations omitted). "If exhaustion was not completed at the time of filing, dismissal is mandatory." Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003).

*Analysis*

The MDOC has created a three-step grievance process inmates must follow before seeking relief in federal court. To initiate this process, an inmate must file an IRR within fifteen (15) days of the date of the incident giving rise to the IRR. If the inmate is dissatisfied with the response to his IRR, he can file an Offender Grievance within seven (7) working days of receiving the response. If the inmate

6

is dissatisfied with the response to his Grievance, he can file a Grievance Appeal within seven (7) days of receiving that response. The failure to file timely appeal will result in the appeal being considered abandoned. Only after the inmate receives a response to his Appeal is the administrative grievance procedure exhausted. If the MDOC's response time limit expires at any stage of the process, the prisoner is allowed to move to the next stage of the process. Porter, 781 F.3d at 450.

The PLRA exhaustion requirement requires compliance with the agency's deadlines. A prisoner's failure to adhere to the filing deadlines deprives him of his right to bring a § 1983 action in federal court. See Woodford v. Ngo, 548 U.S. 81, 88 - 93 (2006) ("PLRA exhaustion requirement requires proper exhaustion" which means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.")

Defendant Dawes moves for summary judgment on Pritchett's claim because he failed to exhaust his administrative remedies established by the MDOC. Although Pritchett claimed in his complaint and at his deposition that he filed an IRR concerning the August 1, 2012 incident with Dawes, the MDOC has no record of the IRR. Pritchett stated in his deposition that he had a copy of the IRR.

However, he failed to produce it either in response to Dawes' discovery request or in response to Dawes' present motion for summary judgment.[2]

Moreover, Pritchett admits that he never completed the MDOC grievance process by filing an Offender Grievance (or a Grievance Appeal). Despite his assertions in his complaint and at his deposition that he filed an IRR, Pritchett asserts for the first time, without any evidence, that he requested but was denied an IRR form to grieve Dawes' actions. A plaintiff must present some evidence, other than mere conclusory statements to demonstrate that he was precluded from fully exhausting his administrative remedies. Gibson v. Weber, 431 F.3d 338, 341 (8th Cir. 2005). Because Pritchett failed to administratively exhaust his claims against Dawes, I will grant Dawes' motion for summary judgment and dismiss Pritchett's case.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Billy Dawes' motion for summary judgment [18] is **GRANTED**.

---

[2] To the extent Pritchett claims that his IRR dated September 21, 2012 includes his claims against Dawes, this assertion is not supported by that document. That document concerned an allegation that Pritchett was pepper sprayed by another correctional officer on one occasion between August 28, 2012 and August 31, 2012. The IRR does not mention Dawes or the incident at issue which took place on August 1, 2012.

**IT IS FURTHER ORDERED that** Plaintiff Eric Pritchett's motion to appoint counsel [23] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2015.